# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KENDALL MERRIWEATHER, ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 08 C 6937 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| DONALD GAETZ, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION & ORDER

Kendall Merriweather is in state custody serving a life sentence, and has filed a habeas petition under 28 U.S.C. § 2254. Respondent Donald Gaetz has moved to dismiss on the basis that the petition is untimely under the one-year statute of limitations for federal habeas petitions. *See* § 2254(d)(1). Merriweather does not dispute that his petition is untimely, but requests this court to employ the doctrine of equitable tolling to excuse the delay.

### BACKGROUND

Merriweather entered a plea of guilty to a multi-count indictment, including murder, and was sentenced on January 7, 2002. He did not move to vacate the judgment nor withdraw the plea within the required thirty days, *see* Ill. Sup. Ct. R. 605(c), and his sentence became final on February 6, 2002.

Merriweather filed a state post-conviction petition ("PC") on July 14, 2003. Generally, a PC stays the one-year statute of limitations, *see* § 2254(d)(2), but that is of little benefit to Merriweather since his judgment had been final for over a year before he filed his PC. The PC was denied by the trial court, appeal was taken and the trial court's denial was affirmed by the appellate court. Merriweather's Petition for Leave to Appeal ("PLA") to the Illinois Supreme Court was denied on

November 29, 2007. The one-year clock to file a federal Section 2254 petition had already expired before the PC was filed, but the length of time was tolled during the PC proceedings, and began accruing again when the PLA was denied. Merriweather mailed the instant petition on November 24, 2008, almost a year after the PLA was denied. In terms of Section 2254(d)'s statute of limitations, twenty-nine months passed before Merriweather filed his petition in this court.[1] Merriweather's petition is therefore untimely. *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) ("proper calculation of Section 2254(d)(2)'s tolling provision excludes time during which properly filed state relief applications are pending but does not reset the date from which the one-year statute of limitations begins to run."). Merriweather does not dispute these facts, but contends that equitable tolling is warranted to excuse his delay. Merriweather points to several facts to support his argument, including that he is illiterate (making it impossible for him to do his own research and writing), he has a speech impediment (making it difficult to obtain assistance from the legal assistants in the prison's law library), and he suffers from a learning disability, the precise nature of which is not clear.[2]

## ANALYSIS

There is an open question whether equitable tolling is available in the context of section 2254 petitions, *see Nolan v. United States*, 358 F.3d 480, 482–83 (7th Cir. 2004); this court will assume that it applies with equal force to Section 2254 petitions as it does to petitions brought under Section

---

[1] The court is combining (1) the slightly more than seventeen months from the time when the judgment became final to when the PC was filed, with (2) the nearly twelve months between the denial of the PLA and the mailing of the instant petition.

[2] These same facts are relevant to the merits of his claim, as well, for Merriweather is contending that he did not enter into the plea agreement knowingly and voluntarily due to his inability to understand the plea, and that his counsel was ineffective for failing to investigate his mental acuity.

2255. *See Miller v. N.J. Dep't of Corrections*, 145 F.3d 616, 617 (3d Cir. 1998) (holding equitable tolling applicable to Section 2254) (citing *Calderon v. U.S. Dist. Ct.*, 128 F.3d 1283, 1289 (9th Cir. 1997)).

To qualify for equitable tolling, a litigant must establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (citations omitted). Yet "[e]quitable tolling is a remedy reserved for extraordinary circumstances far beyond the litigant's control that prevented timely filing." *Nolan*, 358 F.3d at 484 (citations, quotations, and alterations omitted). Indeed, the Seventh Circuit has "yet to identify a circumstance that justifies equitable tolling in the collateral relief context." *Id.* (citations and quotations omitted).

Turning first to the "exceptional circumstances" requirement, this court's research uncovers no Seventh Circuit cases grappling with illiteracy and learning and speech disabilities. The Fifth Circuit has held that illiteracy is of no moment, analogizing this hurdle to the problem faced by a literate petitioner who simply does not understand the nuances of the legal system. *See Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir. 1999). This analogy is dubious since a literate individual could, at least hypothetically, go to a library to learn about the legal system, whereas an illiterate individual would first have to learn to read—a not insubstantial endeavor, especially if a mental disability and/or physical (speech) impediment also exists. A closer analogy would be to an individual who does not speak any English, and who does not have access to legal materials written in a foreign language. In this context, the Ninth Circuit has suggested that equitable tolling could conceivably apply. *See Mendoza v. Carey*, 449 F.3d 1065, 1071 (9th Cir. 2006) (holding that where a prisoner "alleged that he lacks English language ability, was denied access to [native]-language legal materials, and could not procure the assistance of a translator," those facts could constitute an

3

extraordinary circumstance, that "may entitle him to equitable tolling"); *see also Brown v. Roe*, 279 F.3d 742, 745 (9th Cir. 2002) (remanding for reconsideration of petitioner's equitable tolling claim based on a third-grade education and functional illiteracy). Pursuing this line of reasoning, a reasonable inquiry would be whether Merriweather was able to obtain the services of a law clerk in the prison library to help him to write a petition, which would minimize the impact of his illiteracy in the same manner a translator could assist a foreign-language speaker. *See Mendoza*, 449 F.3d at 1071. Indeed, this was something Merriweather was ultimately able to do. Nevertheless, even if Merriweather's condition involves an exceptional circumstance, he would still have to show that he exercised proper diligence throughout this period of delay. Based on the record before the court, it is clear that Merriweather cannot establish diligence.

Merriweather contends that he went to the law library seeking assistance at some point after his judgment became final, but that the law clerks could not understand him. He then returned to the library and was able to communicate effectively with somebody, who informed him that nothing could be done until he obtained a transcript of his trial from the state court. Merriweather attaches the first letter he sent to the state court requesting these materials, which was drafted by his cellmate, which is dated October 28, 2002. Thus, the first tangible step taken by Merriweather to begin working on his appeal did not occur until more than seven and a half months after his conviction had become final.

Merriweather did not receive the transcripts, however, and he then filed a motion requesting the materials, which was received by the state court on March 11, 2003—more than a year after his conviction became final. Merriweather contends that this delay was unavoidable because he did not

4

know his case number and had to obtain it,[3] because it took some time to convince a law clerk to agree to help him in drafting the March 11, 2003 motion, and because the law clerk was helping many other individuals first, and had difficulty doing the legal work because of frequent lock-downs.

Merriweather's motion for the transcripts and records was granted on April 16, 2003. By this time, Merriweather had been transferred to a new facility, and he received the records related to his state court conviction the same month. Three months later, Merriweather finally filed his PC. Merriweather contends this delay was necessary as he needed to find somebody new to assist him with his legal filings.

The court cannot conclude that Merriweather was duly diligent. Once Merriweather turned his attention toward filing his PC, it took only ten months for him to complete it. This strongly suggests that it was not Merriweather's illiteracy, but rather his lack of diligence, that resulted in the original delay. Even if Merriweather were found to be diligent during the seventeen-month period prior to filing the PC, another year elapsed between the denial of the PLA and the filing of the instant petition. When viewed in total, the court cannot find that Merriweather acted with reasonable diligence given that twenty-nine months elapsed before the federal petition was filed.

## CONCLUSION

Respondent's motion to dismiss is granted.

---

[3] In the October 28, 2002 letter, Merriweather states he does not know the case number. In a second letter he sent dated November 13, 2002, he includes the case number. Thus, by at least November 13, 2002, he was aware of the case number.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: July 15, 2009